UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KENNETH HOWARD,

       Plaintiff,

                                     Case No. 08-13501

v.

                                     Honorable Patrick J. Duggan

WAYNE COUNTY SHERIFF'S OFFICE,
FRANK WOOD, JOHN HARDIE, and
WAYNE COUNTY,

       Defendants,

_____/


## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on September 1, 2009.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                       U.S. DISTRICT COURT JUDGE

Kenneth Howard ("Plaintiff") filed this lawsuit in July 2008 alleging that

defendants violated his state and federal constitutional rights and committed state torts

against him. Presently before the Court is defendants' Amended Motion for Summary

Judgment filed on July 7, 2009.[1] Plaintiff responded on July 28, 2009. On August 11,

2009, the Court dispensed with oral argument pursuant to Eastern District of Michigan

Local Rule 7.1(e)(2). For the reasons set forth below, the Court grants the motion.

---

[1]Defendants filed their original Motion for Summary Judgment on July 6, 2009. There
do not appear to be any material differences between the motions.

**I. Factual and Procedural Background**

This lawsuit arises from Plaintiff's arrest by Defendant Frank Wood, a Wayne County Sheriff's Deputy, in the lobby of the Coleman A. Young Municipal Center ("CAYMC") in Detroit.  According to defendants, Plaintiff, a former employee of the City of Detroit working in the CAYMC, elbowed Wood in the stomach as he proceeded through the employee entrance security checkpoint on the morning of August 8, 2006. When Wood ordered that Plaintiff stop, Plaintiff allegedly responded with a profane statement to the effect that Wood needed to get out of his way.  Wood then informed Plaintiff multiple times that he was under arrest but Plaintiff refused to submit.  During this time Wood alleges that Plaintiff made more profane statements and began to walk towards the elevators.  In response, Wood called for backup and Defendant John Hardie, also a Wayne County Sheriff's Deputy, appeared at the scene.  (*See* Def.'s Mot. Ex. 1.)

Plaintiff, meanwhile, disputes Wood's description of these events.  Plaintiff maintains that he politely stated "excuse me" as he entered the CAYMC and waited for other employees and Wood to respond before walking through the security checkpoint. Plaintiff denies making physical contact with Wood and using profanity that morning. After Plaintiff made it half-way to the elevators, however, Wood demanded that he stop and come back.  Plaintiff alleges that Wood asked if Plaintiff had bumped him.  Plaintiff apologized if he had in fact bumped Wood, but also explained that he had said "excuse me."  This discussion continued for a few moments before Wood allegedly stated, "I don't know you, so you can't say I'm giving you a hard time."  (Pl.'s Dep. at 51.)  Wood then indicated that Plaintiff was under arrest and ordered that Plaintiff turn around and

place his hands behind his back.  As Wood reached for Plaintiff's hand, Plaintiff claims to

have put up his hands in surprise.  Plaintiff admits that Wood ordered him to submit to

arrest four or five times but claims that, during this exchange, Wood initially refused to

indicate why he was being arrested.  After Plaintiff asked to know the charges multiple

times, Wood indicated that he was being arrested for assault.  Plaintiff then asserts that he

and Wood walked together towards the elevators in a joint effort to get out of the way of

other employees in the CAYMC.  As they walked, Plaintiff heard Wood call for backup

and a female onlooker informed Wood that she had notified the command station that he

needed assistance.  Plaintiff admits that he yelled at the woman, called her "Goldie

Locks," and told her to mind her own business.  (*Id.* at 49-58.)

Once Hardie arrived as backup, Wood sprayed Plaintiff with pepper spray, took him

to the ground, and placed him in handcuffs.  Plaintiff asserts that Wood's take-down

maneuver choked him and caused him to blackout as he was being handcuffed.  (*Id.* at 59-

63.)  Once Plaintiff was back on his feet, Hardie led him to a jail facility located inside

the CAYMC.  Plaintiff was ultimately charged with assaulting an officer, being a

disorderly person, and refusing the lawful command of an officer.  Plaintiff was acquitted

of all charges by a jury in 2007.

Based on these events, Plaintiff, acting *pro se*, filed the present action against

Wood, Hardie, the Wayne County Sheriff's Department, and Wayne County in Wayne

County Circuit Court.  Plaintiff's complaint presents six claims: (I) violation of his rights

as protected by the Michigan Constitution; (II) assault and battery and excessive force;

(III) unlawful arrest in violation of the Michigan Constitution; (IV) false arrest, false

3

imprisonment, and intentional infliction of emotional distress; (V) false imprisonment;

and (VI) malicious prosecution in violation of the Fifth and Fourteenth Amendments of

the United States Constitution.  Defendants removed the action to this Court on August

13, 2008, on the basis of federal question jurisdiction.  As indicated above, defendants

filed the present Amended Motion for Summary Judgment on July 7, 2009.

**II. Standard of Review**

Summary judgment is appropriate only when there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R.

Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52,

106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule

56(c) mandates summary judgment against a party who fails to establish the existence of

an element essential to that party's case and on which that party bears the burden of proof

at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of

material fact."  *Id.* at 323.  Once the movant meets this burden, the non-movant must

come forward with specific facts showing that there is a genuine issue for trial.  *See*

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348,

1356 (1986).  To demonstrate a genuine issue, the non-movant must present sufficient

evidence upon which a jury could reasonably find for the non-movant; a "scintilla of

evidence" is insufficient.  *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## III. Preliminary Matters

Through the course of briefing the present motion, Plaintiff agreed to the dismissal of two claims and clarified the substance of the remaining claims. In response to defendants' argument that there is no damage remedy against municipalities or individual government employees on the basis of state constitutional violations, Plaintiff agrees to the dismissal of counts I and III. (Pl.'s Resp. at 6.) Then, in response to defendants' assertion of governmental immunity as to state tort claims, Plaintiff requests that the Court construe his remaining claims as claims for civil rights violations brought pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff identifies the remaining counts as follows: (II) excessive force, (IV) false arrest, (V) false imprisonment, and (VI) malicious prosecution. (*Id.* at 7-8.) Defendants have not contested this interpretation of Plaintiff's claims.

Although Plaintiff's complaint fails to identify 42 U.S.C. § 1983 as a basis for his claims, the Court concludes that the complaint provides adequate notice of his federal civil rights claims. *Pro se* complaints such as Plaintiff's "are entitled to a liberal construction" which "requires active interpretation . . . to encompass any allegation stating federal relief." *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (quotations omitted). Claims of excessive force, false arrest, false imprisonment, and malicious prosecution are regularly presented as civil rights violations pursuant to 42 U.S.C. § 1983.

5

*See, e.g.*, *Stemler v. Florence*, 350 F.3d 578, 584 (6th Cir. 2003).  Furthermore, Plaintiff

describes defendants' conduct in count VI as violative of his federal constitutional rights

and defendants removed this action from state court on grounds that Plaintiff was

asserting federal civil rights claims.  (Compl. ¶ 28; Notice of Removal.)  Therefore, the

Court proceeds with the understanding that Plaintiff's only remaining claims allege civil

rights violations pursuant to 42 U.S.C. § 1983 rather than state-law intentional torts.

## IV. Wayne County Sheriff's Department

Before addressing the content of Plaintiff's claims, defendants assert that Wayne

County Sheriff's Department is entitled to summary judgment because it is not a legal

entity capable of being sued.  Plaintiff responds that he intends to show that the Wayne

County Sheriff's Department is responsible for the alleged civil rights violations because

it has a policy of failing to train or properly supervise its employees.  Although Plaintiff

identifies a viable legal theory, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct.

2018 (1978), his allegations are misplaced.  Because "[t]he Sheriff's Department is

merely a department within the jurisdictional authority of Wayne County," it is not an

entity capable of being sued and must be dismissed.  *Sumner v. Wayne County*, 94 F.

Supp. 2d 822, 827 (E.D. Mich. 2000).  To the extent that Plaintiff presents a claim for

failure to train, that claim must be pursued against Wayne County.

## V. Plaintiff's Civil Rights Claims

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when

construed favorably, establish (1) the deprivation of a right secured by the Constitution or

laws of the United States (2) caused by a person acting under the color of state law."

6

*Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).  The second

requirement is not in dispute in this case.  In regard to the first requirement, however,

"government officials performing discretionary functions are shielded from liability

through 'qualified immunity' if they violate an individual's constitutional rights, but the

violated right was not 'clearly established' at the time of the official's actions."  *Marvin v.*

*City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007).

        Applying these rules, the Court must determine whether the facts alleged, when

viewed in the light most favorable to the plaintiff, show the violation of a constitutional

right.  *Moldowan v. City of Warren*, Nos. 07-2115/2116/2117, slip op. at 20 (6th Cir.

Aug. 18, 2009).  If not, "there is no necessity for further inquiries concerning qualified

immunity."  *Id.* (*quoting Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156

(2001)).  If so, the Court must determine whether, "in light of the specific context of the

case," the allegedly violated right was "clearly established."  *Id.* (*quoting Saucier*, 533

U.S. at 201, 121 S. Ct. at 2156).  In conducting this analysis, the Court has discretion in

deciding which inquiry to conduct first.  *Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808,

818 (2009).  The case must be submitted to a jury, however, if "the legal question of

immunity is completely dependent upon which view of the facts is accepted by the jury."

*Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989).  In this case, defendants

argue both that Plaintiff failed to allege facts showing a constitutional violation and that

they are entitled to qualified immunity.

**A. Probable Cause**

        To establish a constitutional violation in regard to his false arrest, false

7

imprisonment, and malicious prosecution claims, Plaintiff must show that defendants

acted without probable cause.  Defendants argue that they are entitled to summary

judgment on these claims because probable cause existed to arrest, imprison, and charge

Plaintiff with obstructing an officer.  Plaintiff maintains, however, that Wood lied about

being elbowed and therefore lacked probable cause to stop him.  Furthermore, Plaintiff

asserts that Wood's failure to inform him that he was being arrested for assault made the

arrest unlawful.

"Probable cause exists where 'the facts and circumstances within the officers'

knowledge and of which they had reasonably trustworthy information are sufficient in

themselves to warrant a man of reasonable caution in the belief that' an offense has been

or is being committed."  *Canter v. Hardy*, 188 F. Supp. 2d 773, 788 (E.D. Mich. 2002)

(quoting *Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 1310-11

(1964)).  In regard to Plaintiff's claims, "[d]efendants only needed probable cause to

arrest . . . on *a* charge; they did not need probable cause to arrest him on *all* charges."

*Atkins v. Twp. of Flint*, 94 Fed. Appx. 342, 348 (6th Cir. 2004).[2]

Although there remains a genuine issue of fact as to whether Wood had probable

cause to arrest Plaintiff for assault or merely lied about being elbowed, Wood nonetheless

---

[2]Although *Atkins* discussed the need for probable cause only in the context of an unlawful arrest claim, the analysis applies equally to Plaintiff's other claims, all of which stem from the Fourth Amendment's protection against unlawful seizure.  The Sixth Circuit has previously explained that Plaintiff's "malicious prosecution" claim should actually be styled as a claim for "continued detention without probable cause" in violation of the Fourth Amendment.  *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006).  Consequently, the presence of probable cause for any single offense bars Plaintiff's claim for malicious prosecution insofar as it justifies his "continued detention" in the form of criminal prosecution.

8

had probable cause to arrest Plaintiff for obstruction.  Under Michigan law, "an individual

who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the

individual knows or has reason to know is performing his or her duties is guilty of a

felony."  Mich. Comp. Laws § 750.81d(1).  In the context of this law, obstruction

includes "a knowing failure to comply with a lawful command."  *Id.* § 750.81d(7)(a).

Furthermore, where the charged conduct involves assaulting, resisting, or obstructing an

officer who is attempting to make an arrest, the legality of the underlying arrest is

irrelevant.  *People v. Ventura*, 262 Mich. App. 370, 377, 686 N.W.2d 748, 751-52 (2004).

Therefore, it is a felony in Michigan even "to *passively* fail to obey an *unlawful* command

by the police" during the course of an arrest.  *People v. Mitchell*, No. 278801, 2008 WL

4276542 at *2 (Mich. Ct. App. Sept. 16, 2008).

       In this case, Plaintiff admits that he failed to comply with Wood's orders that he

submit to arrest at least four times.  (Pl.'s Dep. at 52-53.)  Even if Wood initially lacked

probable cause to arrest Plaintiff for assault, Plaintiff's failure to comply with Wood's

first order gave Wood probable cause to arrest Plaintiff for obstruction.  And because

Plaintiff was not arrested until he submitted to Wood, *see United States v. Martin*, 399

F.3d 750, 752 (6th Cir. 2005), Plaintiff's later arrest was supported by probable cause.

Therefore, defendants are entitled to summary judgment in regard to Plaintiff's false

arrest (count IV), false imprisonment (count V), and malicious prosecution (count VI)

claims.[3]

---

       [3]Because a lack of probable cause is a necessary element of these claims, Plaintiff cannot
recover regardless of the fact that Wood initially failed to inform him of the offense for which he

**B. Excessive Force**

In his remaining claim, Plaintiff alleges that Wood used excessive force in effecting

the arrest.  To establish a constitutional violation in an excessive force claim, Plaintiff

must show that Wood's use of force was objectively unreasonable.  *Grawey v. Drury*, 567

F.3d 302, 309 (6th Cir. 2009).  The objective reasonableness of an officer's conduct

"depends on the facts and circumstances of each case viewed from the perspective of a

reasonable officer on the scene and not with 20/20 hindsight."  *Fox v. DeSoto*, 489 F.3d

227, 236 (6th Cir. 2007).  In conducting this analysis, courts often consider: "1) the

severity of the crime at issue; 2) whether the suspect posed an immediate threat to the

safety of the police officer or others; and 3) whether the suspect actively resisted arrest or

attempted to evade arrest by flight."  *Grawey*, 567 F.3d at 310.

The Sixth Circuit has considered the reasonableness of the use of pepper spray in

effecting arrests on several occasions.  Applying the aforementioned analysis, the Sixth

Circuit has held that it is objectively unreasonable for an officer to use pepper spray on an

individual that has already been handcuffed or otherwise subdued.  *See, e.g.*, *Champion v.*

*Outlook Nashville, Inc.*, 380 F.3d 893, 902-03 (6th Cir. 2004).  It is also objectively

unreasonable to use pepper spray to effect an arrest on a person who has not been

informed that he or she is under arrest and is not resisting.  *Grawey*, 567 F.3d at 311.

Where an individual offers some kind or resistance, however, the excessive force analysis

becomes more difficult.

_____

was being arrested.

10

In cases involving low-level offenses and some form of resistance—whether verbal or physical—by the arrestee, the detailed circumstances surrounding the arrest determine the outcome of the excessive force analysis. In *Greene v. Barber* the Sixth Circuit considered the following scenario:

> Mr. Greene's supposed crime was not severe; he was being arrested for creating a low-level disturbance in a public place. He was not threatening anyone's safety or attempting to evade arrest by flight. He does appear, however, to have been actively resisting arrest, and he does not contradict the officers' testimony that he refused to be handcuffed.

310 F.3d 889, 898 (6th Cir. 2002). On these facts, the Sixth Circuit concluded that the "use of pepper spray *might* be found to have constituted excessive force . . . ." *Id.* (emphasis added). Meanwhile, the Sixth Circuit concluded in *Abdul-Khaliq v. City of Newark* that the use of pepper spray and knocking an individual to the ground was *not* excessive where that individual admitted "to angry yelling and cursing at the officers, carrying on a prolonged and heated debate about whether or not he had a gun, and vigorously opening his coat in a gesture toward the police officers." 275 Fed. Appx. 517, 521 (6th Cir. 2008). Where the individual admits to jerking a hand away as an officer attempts to handcuff him or her, however, the reasonableness of spraying a chemical agent depends on whether the individual "posed an immediate threat to the safety of the officers or others, or whether the officers interpreted his movement as an attempt to resist arrest." *Vaughn v. City of Lebanon*, 18 Fed. Appx. 252, 268 (6th Cir. 2001).

In this case, there remain too many issues of fact for this Court to determine whether Wood's conduct rose to the level of excessive force. On the one hand, Plaintiff admits that he failed to comply with Wood's orders to submit to arrest, that he put up his hands

11

in shock as Wood reached for his arm, that he yelled at a female onlooker, and that he

spoke in an "excited" voice during the incident.  On the other hand, Plaintiff denies

making physical contact with Wood at any time, denies using profanity, denies yelling at

Wood, and denies walking away from Wood to avoid arrest.  (Pl.'s Dep. at 52-59.)

Viewing these facts in the light most favorable to Plaintiff, Wood's conduct might be

found to have constituted excessive force.

   This conclusion does not end the inquiry, however, because governmental officials

are shielded from liability where the violated right is not clearly established.  To

determine whether a right is clearly established, the Court considers "decisions of the

Supreme Court, decisions of [the Sixth Circuit] and courts within [the Sixth Circuit], and

in limited instances, . . . decisions of other circuits."  *Spurlock v. Satterfield*, 167 F.3d

995, 1006 (6th Cir. 1999).  Within that case law, "[t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing

violates that right. . . . [T]he unlawfulness must be apparent."  *Anderson v. Creighton*,

483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987).

   In light of the foregoing discussion of the Sixth Circuit's case law regarding the use

of pepper spray (or other chemical agents), the Court concludes that Wood's conduct did

not violate a "clearly established" constitutional right.  The precise contours of the right

to be free from the use of excessive force remain unclear where an individual offers some

form of resistance to an arresting officer.  Considering facts very similar to the present

case, the Sixth Circuit in *Greene* only concluded that the use of pepper spray *might* have

constituted excessive force.  *Greene*, 310 F.3d at 898.  Even assuming Wood's conduct

12

amounted to excessive force, the unlawfulness of his conduct is not apparent in light of

Plaintiff's admitted reaction and the Sixth Circuit's holdings in *Greene*, *Abdul-Kaliq*, and

*Vaughn*.  Therefore, Wood is shielded from liability by qualified immunity and

defendants are entitled to summary judgment on Plaintiff's excessive force claim.[4]

## VII. Conclusion

Defendants are entitled to summary judgment on Plaintiff's remaining civil rights

claims.  The existence of probable cause to arrest, imprison, and charge Plaintiff with

obstructing an officer defeats Plaintiff's false arrest, false imprisonment, and malicious

prosecution claims.  Furthermore, in view of Plaintiff's admitted conduct and repeated

failure to obey Wood's commands, Wood's use of force to effect Plaintiff's arrest did not

violate a clearly established right to be free from the use of excessive force.

Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED**.

A judgment consistent with this opinion will issue.

s/PATRICK J. DUGGAN

---

[4]Plaintiff's excessive force claim complains about the conduct of "the deputies"—i.e. Wood and Hardie.  In his deposition, Plaintiff explained that the claim against Hardie is based on Hardie's failure to prevent Wood from using excessive force.  Having concluded that Wood's conduct did not violate a "clearly established" right, Hardie's inaction cannot have violated a "clearly established" right.  Therefore, Hardie is also protected by qualified immunity as to this claim.

Wayne County, meanwhile, is not entitled to protection by the doctrine of qualified immunity.  *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992).  Plaintiff's excessive force claim, however, fails to allege wrongdoing by Wayne County.  There is no allegation in the complaint or supporting record evidence, for example, that Wood's alleged use of excessive force was caused by a Wayne County policy or failure to train.  Therefore, the Court concludes that summary judgment is appropriate for all defendants.

13

UNITED STATES DISTRICT JUDGE

Copies to:
Kenneth Howard
Post Office Box 43823
Detroit, MI 48243

James M. Surowiec, Esq.